## FREDERICK WREGE v. HENRY WESTCOTT.

1. In an action of trespass for assault and battery, evidence directly tending to show that the plaintiff had got up a false case, to impose upon the jury, is competent in mitigation of damages.
2. A letter from the plaintiff to the father of the defendant, not containing a statement of any facts material to the controversy, and relating only to an offer of compromise, is not competent evidence.

On rule to show cause, &c.

This was an action of trespass for an assault and battery. The issue was tried at the Hudson Circuit, and a verdict rendered for the plaintiff for six cents damages.

A rule on the defendant to show cause why the verdict should not be set aside was granted by the court.

The reasons assigned for setting aside the verdict are stated in the opinions delivered.

For the rule, *S. B. Ransom.*

Contra, *C. H. Winfield.*

The opinion of the court was delivered by the

CHIEF JUSTICE. There was a verdict in this case for the plaintiff for six cents damages. The action was for assault and battery. The plaintiff seeks to·set aside the verdict because the damages are insufficient to compensate for the injury, and should have been more than nominal under the evidence in the cause; and also upon the further ground of the admission of illegal evidence on the part of the defendant, and the rejection of legal evidence offered by the plaintiff.

The plaintiff was a hired man, working on the farm of the father of defendant, some distance from Jersey City. The defendant lived with his father in Jersey City. The plaintiff alleged, on the trial, and attempted to prove that, in March, 1860, while near the stable of the defendant's father attending to his lawful business, he was set upon and cruelly beaten with a stone by the defendant; that during the conflict, he

received a blow, which produced a rupture of the walls of the abdomen, so that his bowels came out.

On the other hand, the allegation of the defendant was, that the *plaintiff* sought a quarrel and conflict for the purpose of feigning injury and sickness on account of the beating he might receive, in order to get damages from the defendant; that this was a preconcerted plan, and avowed by him in advance of the quarrel; that the plaintiff received no substantial injury, and that the rupture with which he was afflicted was the result of a previous injury, and had been of long standing.

Both parties directed their evidence to sustain these points, and to rebut the proof made against them. Michael Keefe, who was present at the affray, and was a principal witness for the defence, testified that he had a conversation with the plaintiff about a difficulty he had with the defendant; that he and Henry had had such a difficulty some time before, in which plaintiff said he was a damn fool, that he did not get around him, so that he would strike him, then go home and go to bed, and say he was sick, and send for a doctor, and then he could knock a little $300 or $400 out of him; that he told him it was not worth while—he could earn enough to support himself.

This evidence the plaintiff objected to as irrelevant.

There was considerable medical evidence in the cause to show that the rupture could not have been the result of injury received by plaintiff at the quarrel, and that it was pretended to have been caused by the defendant to extort money, by untruly aggravating the damages.

The evidence was competent for the purpose of showing that the plaintiff had got up a false case to impose upon the jury. It directly tended to prove that, and was therefore calculated to diminish the plaintiff's damages.

On his cross-examination, this witness said that defendant did not strike or hurt him at all; that he did not have his head tied up, or show Frederick Wrege, plaintiff's son, any marks on his head or face, and tell him that it was where

Harry Westcott had beat or struck him, for he did not strike or hurt him.

The plaintiff, on his rebutting case, offered to show, by plaintiff's son, that he did see Keefe have his head tied up after his trouble with Henry, and did see the marks on it which he said were made by Henry Westcott. The court overruled this evidence.

The evidence was competent to contradict Keefe. His testimony was material, as I have already stated, to show the existence of a quarrel between him and Henry, in which he was not injured, and the advice of the plaintiff to feign an injury, which he had not received, to extort money from Westcott.

If that was competent, I think this is so also, as it directly tends to weaken the force of the evidence of Keefe as to plaintiff's advice to feign an injury which he had never received.

Plaintiff's counsel also objected to a letter of the plaintiff, written to the defendant's father, in June, 1861, in regard to the then pending suit. It all relates to an alleged offer of compromise, made by Mr. Winfield on behalf of defendant's father, and to conversations between him and Mr. Winfield and his own counsel, about the inability of plaintiff, a poor man, to cope in litigation with a rich legislator like Mr. Westcott. At the close of the letter, the plaintiff says, I give you now three days' time, from the date above said, to let me know whether I receive $600 out of your hand or not; otherwise I will take a step you should not like very much.

This letter was written for the plaintiff, he not speaking or writing English, and sent to Mr. Westcott, the father.

The $600 referred to in it was the amount which the plaintiff alleged Westcott's attorney had agreed to pay him, by way of compromise. The letter does not contain any statement of any fact material to the controversy; it relates entirely to an offer of compromise, and should not have been received.

These decisions of the court necessarily prejudiced the

plaintiff, and reduced, it is probable, the amount of damages recovered by the verdict to the unusual sum found, at least we cannot say they did not produce that result.

The verdict should be set aside, and a new trial granted.

VREDENBURGH, J. This was an action brought by the plaintiff against the defendant for an assault and battery. The defendant pleaded not guilty. A verdict for the plaintiff for six cents.

The plaintiff now moves for a new trial—1st, upon the ground that the verdict was against the weight of the evidence; 2d, upon the ground of illegal evidence admitted; 3d, that legal evidence was overruled.

Without going into the question of the weight of the evidence, or expressing any opinion thereon, I think that illegal evidence was admitted in the case. One Michael Keefe, a witness for the defendant, testified, among other things, that some time before the assault complained of, he, Keefe, had a difficulty with the defendant, and that, in a conversation he, Keefe, had with the plaintiff about this difficulty between Keefe and the defendant, the plaintiff said to Keefe, that he, Keefe, was a fool that he did not get around the defendant so that he would strike him, then go home and go to bed, and say he was sick, and send for a doctor, and then he could knock a nice little $300 or $400 out of him. Keefe answered the plaintiff, that was not worth while; he could earn enough to support himself. Now the facts proved here were not relative to the controversy before the court; they related to an assault and battery at another time, and upon another person, and whether the defendant had or had not committed an assault and battery upon Keefe was a matter of indifference to the cause on trial. The evidence could only have been produced to prove the bad character of the plaintiff, to prove that he could advise another man to sue the plaintiff on an unjust claim. Such evidence for such a purpose was incompetent. In the first place, it is proving a bad character by a specific act, which the plaintiff could not be deemed to

·have come prepared to meet. In the next place, whether the advice the plaintiff gave Keefe on that occasion involved .any moral turpitude, depended altogether upon the question whether' Keefe had a just claim upon the defendant for ·damages. So that if it was competent for the defendant to prove that the plaintiff gave such advice to Keefe, it was ·clearly competent for the plaintiff to prove, if he happened to be prepared to meet such an issue, that Keefe was in reality hurt, and had a just and good cause of action. This the plaintiff did actually afterwards offer to prove. This offer by the plaintiff the court overruled. So that the case went to the jury under proof that the plaintiff was base ·enough to advise Keefe to bring an unjust suit against the ·defendant, while the evidence offered by the plaintiff to prove that Keefe had a just cause for a suit against the defendant, .and that his advice was honest, was overruled.

The original offer of the evidence of Keefe, in this regard, was illegal, and calculated to create prejudice, and probably ·did create prejudice in the minds of the jury against the plaintiff, or at least, if it was competent for the defendant to prove it, it could not be illegal for the plaintiff to disprove it.

Let the verdict be set aside.